UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ROBERT JOSLYN | : | CIVIL ACTION NO. |
| | : | 07cv305 (JCH) |
| v. | : | |
| | : | |
| BRIAN MURPHY, MATTHEW REGAN, | : | FIRST AMENDED |
| NELSON CORREIA, DAVID | : | COMPLAINT FOR DAMAGES |
| BUTKIEWICUS, PETER OBERG, | : | |
| MICHAEL PAFUMI, PATRICK MAIA, | : | |
| BRIAN BRADWAY, JAMES YELINEK, | : | |
| GERALD HINES, SHANE MALONEY, | : | |
| ROBERT PEPE, SEAN GUIMONOD, | : | |
| STEVEN CONGELOS, JUAN | : | |
| MELENDEZ, STEVEN LASH, in their | : | |
| individual capacities. | : | JULY 17, 2007 |

## JURISDICTION

1.  This case is brought pursuant to 42 U.S.C. § 1983. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343. Jurisdiction over the state law claims is conferred by 28 U.S.C. § 1367.

## VENUE

2.  Venue is based upon 28 U.S.C. §§ 1391 (b)(1) and (2). All of the defendants reside in the District of Connecticut, and all of the events or omissions giving rise to the claims herein arose in the District of Connecticut.

## PARTIES

3. Plaintiff ROBERT JOSLYN is a former inmate at the Connecticut Department of Correction (DOC).

4. Defendant BRIAN MURPHY was at all relevant times the Deputy Commissioner of the DOC. Prior to and on March 9, 2004, he was responsible for supervising staff at the Northern Correctional Institution (NCI), a facility of the DOC, including the defendants named in this Complaint. He is sued in his individual capacity only.

5. Defendant MATTHEW REGAN was at all relevant times a captain at NCI. Prior to and on March 9, 2004, he was responsible for supervising NCI staff, including NELSON CORREIA, DAVID BUTKIEWICUS, PETER OBERG, MICHAEL PAFUMI and the GUARD DEFENDANTS. REGAN is sued in his individual capacity only.

6. Defendants CORREIA, BUTKIEWICUS, OBERG and PAFUMI were guards assigned at all relevant times to NCI. They are sued in their individual capacities only.

7. Defendants PATRICK MAIA, BRIAN BRADWAY, JAMES YELINEK, GERALD HINES, SHANE MALONEY, ROBERT PEPE, SEAN GUIMONOD, STEVEN CONGELOS, JUAN MELENDEZ and STEVEN LASH were guards assigned at all relevant times to NCI. The defendants in this paragraph are

collectively referred to as the "GUARD DEFENDANTS." They are sued in their individual capacities only.

## FACTS

8. At all times mentioned herein, each individual defendant was acting in the course and scope of his employment.

9. At all times mentioned herein, each defendant was acting under color of state law.

10. On March 8, 2004, Robert Joslyn told defendant BRIAN MURPHY that guards at NCI were routinely calling fake "code blues" (an emergency code indicating that inmates are fighting) so that the guards would have an excuse to assault inmates as a form of retaliation and for the guards' own personal enjoyment.

11. Mr. Joslyn complained to MURPHY specifically about defendant BRADWAY, and Mr. Joslyn begged MURPHY to "get me out of here because they're going to kill me."

12. Prior to making these complaints to defendant MURPHY, Mr. Joslyn had been repeatedly threatened and abused by NCI guards.

13. Defendants CORREIA, BUTKIEWICUS and PAFUMI had recently come to Mr. Joslyn's cell at night, and threatened to brutalize and attack him.

14. Defendant MURPHY did nothing to address Mr. Joslyn's complaints or to protect him from harm.

15. Later that day, a number of guards, including CORREIA, BUTKIEWICUS, OBERG and PAFUMI, came to Mr. Joslyn's cell, loudly called him a "snitch" and a "child molester," told him "we're gonna call a code blue on you," and said "thanks for the report to the Deputy Commissioner."

16. Mr. Joslyn was not a snitch or a child molester. The guards called him these things because they knew that other inmates assaulted snitches and child molesters, and they wanted Mr. Joslyn to be assaulted by other inmates.

17. These threats were followed, over the course of the next few hours, by others. Typical, were threats that "we're coming to get you, get ready."

18. Defendants CORREIA, BUTKIEWICUS, OBERG and PAFUMI came to Mr. Joslyn's cell and threatened him multiple times over a period of hours.

19. Mr. Joslyn began preparing a written complaint about the guards' threats and other misconduct.

20. At approximately 5:00 p.m., defendant OBERG came into Mr. Joslyn's cell, found Mr. Joslyn's written complaint, crumpled it up and took it.

21. Mr. Joslyn was then taken out of the cell, and his cell was shaken down. When he returned, some of his property was missing, including the ink cartridge for his pen and a copy of the DOC's Administrative Directive concerning employee discipline.

22. A couple of hours later, defendants CORREIA and PAFUMI came to Mr. Joslyn's cell and saw him writing another complaint. PARFUMI said "I'll show you how to write." CORREIA said "we're coming soon, get ready."

23. Mr. Joslyn was then given a false disciplinary ticket for making threats against CORREIA, who was, in fact, threatening him.

24. The next morning, March 9, defendant REGAN and nine other guards, including defendants MAIA, LASH, MALONEY, MENENDEZ, BRADWAY and YELINEK, entered Mr. Joslyn's cell.

25. Defendant REGAN grabbed Mr. Joslyn by the neck, pushed him against the wall while handcuffed, and threatened him with physical harm. The nine other guards assisted REGAN while he abused and threatened Mr. Joslyn, and they threw Mr. Joslyn's property around the cell.

26. While in the cell, MENENDEZ said to MAIA "spit on me, we can set him up."

27. While in the cell, REGAN threatened "we're gonna fuck you up and mace you."

28. REGAN'S and the other guards' movements in and out of Mr. Joslyn's cell were captured on the NCI Nice-Vision system and were recorded on compact disks.

29. Later, MAIA and MALONEY came back to Mr. Joslyn's cell and threatened and taunted him.

30.     Mr. Joslyn was so afraid that REGAN and the GUARD DEFENDANTS would come to his cell to beat him that he tried to pad his cell by putting a mattress over the desk, using the other mattress to pad the side of the bottom bunk, tying sheets around the bunk ladder and covering the stool with a towel.

31.     Thinking that the only way he could avoid an imminent, and serious or fatal, beating would be to be formally disciplined, placed in in-cell restraints and moved to a different tier, Mr. Joslyn broke the sprinkler head in his cell, causing water to flow into the cell.

32.     REGAN and the GUARD DEFENDANTS came to Mr. Joslyn's cell door.  They had at least one attack dog with them.

33.     REGAN repeatedly maced Mr. Joslyn in the face through the food trap in the cell door.

34.     The macings, beatings, and other uses of excessive force are captured on videotape.

35.     The macings, beatings, and other uses of excessive force are also described in a June 9, 2004 DOC Security Division Investigation Report.  A true and correct copy of the Report is attached hereto as Exhibit A, and the factual statements, findings and conclusions of the Report are fully incorporated as factual allegations herein.

36. At the time REGAN and the GUARD DEFENDANTS entered Mr. Joslyn's cell, they had failed to notify mental health or medical workers, as required before any force could be justifiably used against Mr. Joslyn.

37. REGAN and the GUARD DEFENDANTS also violated DOC policies and practices by opening Mr. Joslyn's cell door and entering the cell before commanding that he cuff up.

38. REGAN and the GUARD DEFENDANTS also violated DOC policies and practices by commencing their assault on Mr. Joslyn while he was lying face down on his bunk and was obviously presenting no danger of any kind to staff, to property or to himself.

39. After REGAN maced Mr. Joslyn multiple times in the face through the food trap in the cell door, he and the GUARD DEFENDANTS rushed into the cell. They were wearing gas masks and latex gloves.

40. At the time the defendants rushed into the cell, Mr. Joslyn was lying face down on his bed.

41. There were eight to sixteen inches of water in the cell.

42. REGAN and the GUARD DEFENDANTS, with the exception of defendant MELENDEZ (who was videotaping some of the action in the cell), picked Mr. Joslyn off the bed and slammed his body and head on the floor.

43. REGAN and the GUARD DEFENDANTS held Mr. Joslyn face down with his head under water so that he could not breathe. They repeatedly and

ferociously struck Mr. Joslyn's face and skull against the cement floor and with their fists and with some type of hard metal object such as handcuffs.

44. Defendant MAIA kicked Mr. Joslyn's face and body while the other guards held Mr. Joslyn's face under water.

45. The defendants turned Mr. Joslyn's face into a bloody pulp.

46. Mr. Joslyn pleaded "they're trying to kill me."

47. Mr. Joslyn was bleeding profusely from multiple lacerations and contusions on his face and head.

48. Mr. Joslyn pleaded "I'm not resisting."

49. REGAN and the GUARD DEFENDANTS then pulled Mr. Joslyn from the cell and forced him backwards, in handcuffs, leg irons and a tether chain, to a shower stall.

50. In the shower stall, defendant MAIA slammed Mr. Joslyn's head into the wall and twisted Mr. Joslyn's hand and wrist.

51. The thud of Mr. Joslyn's head hitting the wall could be heard by all of the defendants present, and Mr. Joslyn screamed in pain.

52. Defendants MAIA, MALONEY and CONGELOS then strip searched Mr. Joslyn. During and after the strip search, MAIA continued to inflict pain on Mr. Joslyn, and Mr. Joslyn continued to scream in pain.

53. Defendants REGAN, MAIA, MALONEY and CONGELOS then took Mr. Joslyn to the NCI medical unit.

54. Mr. Joslyn was seen by a DOC doctor who immediately referred him to the UConn Emergency Department for emergency medical attention.

55. When the doctor asked Mr. Joslyn what happened to cause the injuries to him, REGAN ordered Mr. Joslyn "keep your mouth shut."

56. Mr. Joslyn was taken to the UConn Emergency Department in an ambulance.

57. Mr. Joslyn's physical injuries included head trauma, multiple blows to his face and forehead, lumps and contusions all over his face and forehead, a red and swollen ear, multiple lacerations to his face, a laceration to his chest, contusions on his abdomen, a swollen left eye and a right eye that was bleeding and was so swollen that neither he nor the DOC doctor could open it.

58. Mr. Joslyn was sutured above both his left and right eyes. He received a head CT to rule out brain injury. He has permanent scarring on his face, including a scar that resembles the teeth from a set of handcuffs.

59. The defendants also inflicted intense fear, anxiety and emotional trauma, injuries and suffering on Mr. Joslyn, both during their assault on him on March 9 and in the days preceding the attack.

60. Mr. Joslyn was so traumatized by the defendants' abuse that, following the attack, he refused to eat anything for approximately 10-12 days so that he would be kept in the medical unit and away from the defendants and other guards who might hurt him.

61.  Prior to his attack on Robert Joslyn, defendant MAIA was disciplined for brutally assaulting another inmate, thus putting defendants MURPHY and REGAN and the other GUARD DEFENDANTS on notice of his violent propensities, his lack of respect for DOC rules and regulations, and his disdain for the dignity and safety of inmates.

62.  The DOC's office of internal affairs, known as the Security Division, conducted an investigation into the defendants' assault on Mr. Joslyn.

63.  The Security Division investigator concluded that: "excessive use of force" was inflicted on Mr. Joslyn; REGAN placed Mr. Joslyn "in danger;" Mr. Joslyn "sustained injuries as a result of staff failing to follow proper procedures and protocols;" and the force used on Mr. Joslyn was "planned" by REGAN and the GUARD DEFENDANTS.  See Security Division Report, attached as Exhibit A.

64.  The Security Division investigator also concluded that defendant MAIA "used excessive force on inmate Joslyn which resulted in injuries to the inmate.  He was also less than truthful when asked how inmate Joslyn sustained those injuries."

65.  The Security Division investigator also concluded that defendants BRADWAY and MALONEY "witnessed" defendant MAIA "use excessive force on" Mr. Joslyn, but "did not intervene. . . ."

66.  Mr. Joslyn has satisfied all applicable administrative exhaustion requirements of the Prison Litigation Reform Act, and is statutorily entitled to file this Complaint.

### FIRST CLAIM FOR RELIEF

(Excessive Force against MATTHEW REGAN and the GUARD DEFENDANTS in their individual capacities)

67. Plaintiff realleges and incorporates by reference each and every allegation in paragraphs 1 through 66.

68. The force used by MATTHEW REGAN and the GUARD DEFENDANTS against Robert Joslyn was unreasonable, unnecessary and excessive.

69. The defendants subjected Robert Joslyn to pain, and physical and mental injury, in violation of Mr. Joslyn's rights under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

### SECOND CLAIM FOR RELIEF

(Excessive Force, Supervisory Liability, against BRIAN MURPHY and MATTHEW REGAN in their individual capacities)

70. Plaintiff realleges and incorporates by reference each and every allegation in paragraphs 1 through 66.

71. Defendants MURPHY and REGAN were deliberately indifferent in supervising their subordinates who used excessive force against Robert Joslyn.

72. The acts and omissions of defendant MURPHY and REGAN proximately caused Robert Joslyn's suffering and injuries.

73. By their acts and failures to act, defendants MURPHY and REGAN subjected Robert Joslyn to pain, and physical and mental injury, in violation of Mr.

Joslyn's rights under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

### THIRD CLAIM FOR RELIEF

(Deliberate Indifference to Safety -- Failure to Protect -- against defendants MURPHY, REGAN, CORREIA, BUTKIEWICUS, OBERG and PAFUMI, and the GUARD DEFENDANTS in their individual capacities)

74. Plaintiff realleges and incorporates by reference each and every allegation in paragraphs 1 through 66.

75. Each of the defendants knew that the other defendants, and each of them, were using, or were threatening to use, excessive force against Robert Joslyn.

76. Each defendant could have taken action to stop the threats and the use of excessive force, but refused or failed to do so.

77. Each defendant failed to protect Mr. Joslyn in violation of Mr. Joslyn's rights under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

### FOURTH CLAIM FOR RELIEF

(State Common Law Assault and Battery against MATTHEW REGAN and the GUARD DEFENDANTS in their individual capacities)

78. Plaintiff realleges and incorporates by reference each and every allegation in paragraphs 1 through 66.

79. The defendants intended to cause harmful and offensive contact with Robert Joslyn.

80. The defendants intended to cause an imminent apprehension of harmful and offensive contact.

81. Harmful contact with Robert Joslyn resulted.

82. Robert Joslyn did not consent to the contact.

83. The defendants recklessly disregarded the consequences of their actions.

### FIFTH CLAIM FOR RELIEF

(Intentional Infliction of Emotional Distress against BRIAN MURPHY, MATTHEW REGAN, CORREIA, BUTKIEWICUS, OBERG and PAFUMI, and the GUARD DEFENDANTS in their individual capacities)

84. Plaintiff realleges and incorporates by reference each and every allegation in paragraphs 1 through 66.

85. The defendants intended to inflict emotional distress on Mr. Joslyn or knew or should have known that emotional distress was the likely result of their conduct.

86. The defendants' conduct was extreme and outrageous.

87. The defendants' conduct was the cause of Mr. Joslyn's emotional distress.

88. The emotional distress sustained by Mr. Joslyn was severe.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff ROBERT JOSLYN prays for relief as follows:

1. compensatory damages according to proof;

2. punitive damages;

3. costs and reasonable attorneys fees; and

4. such further relief as the Court deems just and proper.


Dated:  7/17/07                                         By:  _____/s/_____
                                                              Antonio Ponvert III
                                                              CT 17516
                                                              Attorney for Plaintiff
                                                              Koskoff, Koskoff & Bieder
                                                              350 Fairfield Avenue
                                                              Bridgeport, CT  06604
                                                              Tele:  (203) 336-4421
                                                              Fax:   (203) 368-3244

**CERTIFICATION**

I hereby certify that on July 17, 2007 a copy of the First Amended Complaint was filed electronically pursuant to the Court's electronic filing system. Notice of this was sent by e-mail to all parties by operation of the Court's electronic filing system.

                                                                                     _____/s/_____
                                                                                      Antonio Ponvert III